Casper Sleep Inc. Accordingly, there was specific and significant value to be derived from this settlement by the parties in that it eliminated any further uncertainty of litigation on an ongoing basis. The parties recognized that uncertainty within the recitals of the settlement agreement in the appendix of 1867, where the parties, using somewhat standard language, expressed their desire to settle all claims and to avoid uncertainty. I take it that your lengthy answer, in effect, says you don't have any quarrel with their description of the behavior of service attorneys during the course of the litigation. Well, I certainly do, Your Honor. And I apologize if I misunderstood your question. I understood you to be referring to the district court's view of it. In my view, our behavior- We can only hypothesize about the district court's views, so you're correct not to deal with that. But their description of the litigating context, do you disagree with their description? I do, Your Honor. And this is, of course, the subject of their cross-appeal. And we have addressed this in our response to cross-appeal at some length, referring point-to-point to the issues they raise. The primary issue they seem to raise is, frankly, one of clean construction, that to Casper, from day one, they took a different view of the claims than did Serta-Simmons. And as a result, in their view, no request for preliminary injunction ever should have been sought. To Serta-Simmons, of course, when a new product hits the market and has just been released, that is when a request for preliminary injunction is, in fact, the most appropriate time to so make a request. But thereafter, the parties engaged in a rather heated litigation, largely focused on claim construction. The district court initially entered a claim construction that would have tilted in favor of Casper. And Serta-Simmons, as was appropriate, requested reconsideration of that claim construction. The district court then, in fact, did reconsider its claim construction order, entered a claim construction that highly favored Serta-Simmons. And on the plain language of the district court's claim construction, there could be no dispute that the claim was infringed. Ultimately, then, at the time of summary judgment, the district court did not further expressly modify its claim construction. But now, the district court seems to have implicitly backed off of its claim construction in view of what it identified as a prosecution history disclaimer. What that course of dealings suggests is, in fact, a highly contested litigation, largely focused on an issue of claim construction that was itself hotly contested. And that, at different stages, the district court tipped in one party's favor or the other as it was swayed from side to side. Do you enter your rebuttal time, Your Honor? I do, Your Honor. Thank you. Thank you. Thank you. Good morning. And may it please the court, Kate Dominguez for CASPER. What's supposed to happen here, under your view, if Serta goes to state court, and the state court determines that the agreement is enforceable and rejects any theories that you have as to its not being enforceable? And then we have this district court judgment which says there's no infringement. How are the courts supposed to reconcile those two judgments? A state court judgment, and of course, we would think that would be wrong, but a state court judgment that did not find frustration of purpose discharging CASPER's payment obligations would have no effect on the district court's summary judgment order. The two are not related. So we have a judgment that the settlement agreement is enforceable, and a determination of non-infringement. Those can coexist? Your Honor, the district court had. No, no. What's the answer to that? Those can coexist. The reason is that the district court, on June 20, when it entered its summary judgment, had jurisdiction over the case. The case was not moved. So it had, and by the way, counsel Furserta just. If the agreement was enforceable then, would they be able to come in and move to vacate the district court judgment under Rule 60? They would not, and let me explain why. So counsel Furserta stood up here and actually conceded that the case was not moved. He stood up here and told this panel  the court doesn't have power to act. At the same time, he told the panel that the court did have power to act in this case, power to grant substantive relief to Furserta to enforce the agreement. I don't see the inconsistency there, but why doesn't a case become moved when the parties settle it, even if there are terms that have to be implemented under the agreement? Why doesn't that move the case? Under the Gould and Selke cases in the Seventh Circuit, those cases make clear that the settlement has to be final. So if the settlement finally resolves. But those cases don't bind us. We have cases that exigent, for example, that deal with similar situations, which suggest that a binding settlement agreement doesn't move the case. So you're right, your honor. The Seventh Circuit doesn't bind this court, but the Constitution does. The Constitution doesn't say anything about settlements. The Constitution. So why would it say something about settlements? There's all sorts of things it doesn't say something about. Exactly. Article III speaks to cases or controversies. So the key issue has to be, was there a live case or controversy on June 20th? If a settlement agreement does not resolve the controversy between the parties on the day that it's signed, it doesn't move the case. And you're relying on Seventh Circuit law for that position? We cite two Seventh Circuit cases for that proposition. That's not even the regional circuit that's applicable here, right? If we were to look to regional circuit law, it wouldn't be the Seventh Circuit. The Second Circuit law is perfectly consistent with that. In fact, in the Second Circuit, there's case law holding that a tentative settlement does not move the case. What makes this tentative? The same case holds that, in that case, two parties had signed and exchanged dismissals, but simply not submitted them to the court yet. And the Second Circuit held that the case was not moved because those had not been submitted to the court. Had not been submitted to the court. Are you saying this settlement had not been submitted to the court before the summary judgment was issued? That's right, Your Honor. So per the parties' agreement, the parties bargained to keep the case alive. In fact, CERDA tells us in its brief at page 12. But the court was advised about the settlement, right? Yeah. Don't tell us what's in the settlement. My question is, are you saying that the court was not notified of a settlement fact? The court was notified that there was an agreement that intended to resolve the issues in controversy. Not that it did. And notably, the parties did not file a Rule 41 dismissal. A Rule 41 dismissal would have rooted in. Where do we find what the court was told? If you turn to the notice. It's at page 1839. Yes, 1839. So the language I was referring to, and let me know if Your Honor needs a minute to get to that page. The language I was referring to states that the parties have entered into a settlement agreement, the terms of which are intended to resolve the matters in controversy in the instant litigation. Accordingly. What's ambiguous about that? I actually think it's unambiguous. It tells the court not that there is a resolved case. Read it again, please. Maybe I misunderstood it. The parties have entered into a settlement agreement. Stop right there. The parties have entered into a settlement agreement. Positive, OK. And the next sentence? The terms of which are intended to resolve the matters in controversy. Why isn't that an accurate description of what the settlement agreement was intended to do? It is accurate, Your Honor. And if you look at the terms of the agreement, it says on its face that at the time the parties submit this motion to stay, it will be pending final settlement. It says that verbatim in the agreement. The agreement, by its terms, contemplated that it would not be final. The settlement would not be final on the day that the parties submitted the motion to stay. And SIRTA actually explains. Tell me again, where did the agreement say that? Sure. So if you turn to the settlement agreement, and if you turn specifically to Appendix 1868, and you look to Section 2.2, it says, immediately upon full execution of this settlement agreement, the parties will cause their respective counsel to file a joint motion to stay the litigation pending final settlement. But you don't dispute that the agreement resolved the case, right? Not at the time it was intended to ultimately resolve the case. But at the time it was signed, and on June 20th. You dispute that the agreement was binding, apart from this argument that you make about frustration of purpose. It was binding, right? At the time it was executed, it was binding. It was binding, yes. Just like the signed agreements in Gould and Selke. Well, doesn't that end the case? This settlement agreement did not end the case on June 18th when it was signed. There was no final settlement on June 20th when the district court entered its summary judgment order. And therefore, again, because SIRTA bargained to keep the case alive, it said that in its brief, that it was unsure about payment. And so it negotiated to keep the case alive. It could have done something different. It could have negotiated to file an immediate Rule 41 dismissal, which is self-executing. What do you mean it negotiated to keep the case alive? The settlement agreement resolved the case. Your Honor, counsel for SIRTA stood up here and told Your Honor that it was the intention of the parties to keep the case open for purposes of enforcement. A consent judgment resolves the case, but that doesn't prevent the court from having jurisdiction to enforce the consent judgment. It depends on what the consent judgment includes, Your Honor. Under Kokonan, in order to have jurisdiction to enforce, the court would have had to incorporate the settlement agreement into an order so that under ancillary jurisdiction, it was exercising its powers to enforce its own orders. Or potentially, although Kokonan rejects this proposition, it would have to be ancillary in the sense that it involved the same case or controversy. Kokonan actually said it didn't apply that leg of ancillary jurisdiction, and I think it equally would not apply here. But those are the only two basis for a district court to have jurisdiction to enforce a settlement agreement. Neither of those are present here. So let me be sure I understand your argument. Your position boils down to one rather specific question, and that is, was this a settlement agreement, a final settlement agreement, even though there were things yet to be performed? Your position is that was not a binding settlement agreement at the time it was entered into. Is that the case? Not quite. The agreement was binding. There's no dispute about that. The agreement was binding. The question was, when signed, did it believe this all? It was a settlement agreement that was binding on the parties. You agree to that? It was a settlement agreement that was binding on the parties, the terms of which, ultimately, had everything been carried out, would have resolved the case. However, just like in Kuhl and Sessions. It did not resolve the case. It would have resolved the settlement agreement. It didn't say anything about the case. That's for us to decide whether it resolved the case. The question is, was the settlement agreement a binding agreement with future performance to be provided? The settlement agreement was an agreement that was binding on the parties to carry out the steps therein, and specifically provided that there would be no dismissal and no release, and therefore, no resolution of the controversy between the parties on the date it was signed. That was the state of play on June 20th, when the district court entered its summary judgment order. And you get there by your reading of the settlement agreement. By the plain words of the settlement agreement that say, in section 2.2, that the motion to stay was pending final settlement. If we disagree with you and think that a settlement agreement was formed and executed, and that there was no longer Article III case or controversy, and then we vacate the summary judgment, what else do you think should happen? I mean, I'm just wondering procedurally, what is going to happen? Opposing counsel is asking that we remand with instructions to enforce the settlement agreement. What is your position on that? So, if this court were to find that there was no case or controversy, that the case was moved on June 20th, such that the district court did not have power to enter the summary judgment order, then the case was moot for all purposes. Including enforcement? Including enforcement. Kekkonen is absolutely clear about that. But there are lots of cases that say the opposite. There are lots of cases that say that the district court retains jurisdiction for enforcement. The district court must retain jurisdiction. In this case, it did not. This is what Kekkonen changed about the law prior to Kekkonen. And I would note that CERDA cites many pre-Kekkonen cases that talk about an inherent power. Kekkonen rejected that. Kekkonen said, there is no inherent power to enforce. It has to come from somewhere. It's not dealing with situations where there's a settlement before the judgment. I'm sorry? Kekkonen is not dealing with this situation. It's not dealing with situations in which there's a settlement agreement before the court enters judgment. I'm not sure if that's correct, Your Honor. It deals with when a motion to, entertain a motion to enforce. And what it makes clear is that a court, a district court does not have inherent power to enforce a state court contract between two parties, even though it settles the case. It has to come from ancillary jurisdiction, meaning in Kekkonen, it related to whether a court had the power to enforce its own orders. And the court there, like here- It said in Kekkonen, the settlement was reached after the district court's judgment, right? In Kekkonen, the settlement, I'm not sure the timing of the settlement, but what I know, Your Honor, is that when the motion to enforce was brought, when the motion to enforce was brought, the case was closed. And the court had not incorporated the terms of the settlement or stated that the settlement was so ordered. And actually, now I recall. So what happened was the parties came to the court and they recited the terms of their agreement, which the court heard, but did not incorporate into any order. Maybe we should direct the district court to incorporate the settlement agreement in the word. I don't think this court has power to do that. It's discretionary on the district court. The district court has discretion to decide whether to entertain an enforcement motion over a state court matter. It has that discretion if it has jurisdiction, but as we've made clear, in this case, under Kekkonen, there was no jurisdiction to entertain that motion. You can always find that the district court's decision was an abuse of discretion, can't we? Not in this case, Your Honor. I see I'm cutting into my rebuttal time. I'm happy to keep going. If the court does not have questions on the cross appeal, if there are questions on the cross appeal, I'd like to reserve my time. I have one quick question remaining, which is you spent a lot of time discussing their bad behavior. Why did you do, what was the point of that? What did you want us to get from that? Your Honor, there were discovery abuses in this case that I believe if a court does not sanction, they invite. There's the issue of the merits, and I think those speak for themselves. This is a case in which the merits were so strong, the district court saw a motion to stay pending settlement and denied it, and within 48 hours, issued a summary judgment ruling totally vindicating Casper. That's the merits. But when you look to the discovery conduct, this is a case in which, as just one example. The attorney's fees issue becomes moot if we rule against you on the settlement agreement, right? You're no longer available for it. That's correct, Your Honor. Okay. All right, thank you, Mr. Miller. Thank you. Mr. Schoenhardt. Thank you, Your Honor. Just a few notes, briefly. As to Kekkonen, I think it's easy to get Kekkonen very confused, but I think that it can be readily dispensed with. Kekkonen addressed a situation in which the parties had, in fact, entered a stipulated dismissal. The Supreme Court was addressing whether the court retained jurisdiction to enforce a settlement agreement after that dismissal had been filed. Here, the parties did not get to the point of that dismissal. In fact, that's why, in the post-Kekkonen world, parties generally ask the court to stay pending such things as a settlement payment rather than immediately dismissing cases. I don't think Kekkonen gets us anywhere. What does get us someplace is this court's and the Second Circuit's decisions, this court, indeed, post-Kekkonen, addressing what to do where there is a settlement. This court's case is in Exigent and Gould, and of course, not to be confused, Casper cites to a Seventh Circuit Gould case. We cite to a Federal Circuit Gould case. But this court's decisions in Exigent and Gould both advise that where there is a fully executed settlement agreement, then it is appropriate to vacate the decision below and remand for enforcement of the agreement. There is a reverse and a remand in Exigent. Similarly, in Gould, that is the appropriate course of conduct. Exigent was 2006. That's over a decade after Kekkonen. This court was well aware of the Kekkonen decision and what its implication would be. Where as in Exigent and as in here, and you'll note that the Exigent case is very similar to this in that there was a grant of summary judgment of non-infringement and also invalidity and unenforceability claims that were not addressed, just as the district court here did not address those claims in its June 20th summary judgment. I would also refer you to the Second Circuit's decision in Jena that does predate Kekkonen, but it points out that this circuit and the Second Circuit are aligned on how to address situations like this. In Jena, the Second Circuit ordered a reverse and remand with instructions to enforce. In that case, unlike this, the settlement at issue had not even been fully executed. Rather, the parties had reached a settlement in principle and the court stated at 436 of its decision, a binding settlement was reached and should have been enforced. A settlement is a contract and once entered into is binding and conclusive. So too here. I note that Ms. Dominguez referred to the language out of a payment term here that references pending final settlement. The distinction is actually whether a settlement is fully performed and final or whether the settlement agreement itself is. Here, the settlement agreement itself was fully executed and as Ms. Dominguez acknowledges, was binding at the time it was fully executed. Okay. I think we're out of time. Thank you, Mr. Chairman for your time. Thank you. There wasn't any discussion of the cross appeals, so there's no occasion for a while. Okay. Thank all counsel. The case is submitted. Thank you.